UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| RONALD MARTIN, ) | |
| ) | |
| and ) | |
| ) | |
| BRITA MARTIN, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 2:22-cv-72 |
| ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| HARRY JERNIGAN, CPA ATTORNEY, P.C., ) | |
| ) | |
| and ) | |
| ) | |
| HARRY JERNIGAN ) | |
| ) | |
| Defendants. ) | |
| ) | |

Serve:
Harry Jernigan, CPA Attorney, P.C.
Betterman Services, LLC, Registered Agent
303 Lynnhaven Pkwy, Ste. 100
Virginia Beach, VA 23666

Harry Jernigan
1205 Chattingham Drive
Virginia Beach, VA 23464

**COMPLAINT**

NOW COME the Plaintiffs, Ronald Martin ("Mr. Martin") and Brita Martin (the "Plaintiffs"), by counsel, for their Complaint against Defendant, Harry Jernigan, CPA Attorney, P.C. (the "Firm") and Harry Jernigan, an individual ("Mr. Jernigan")(collectively, the "Defendants"), and hereby states as follows:

**The Parties**

1. Ronald Martin is an individual who is domiciled in New Jersey.

2. Brita Martin is an individual who is domiciled in New Jersey.

3. The Defendant is a Virginia professional corporation with its principal office located at 303 Lynnhaven Pkwy, Ste. 100, Virginia Beach, Virginia 23452.

4. Harry Jernigan is an individual who is domiciled in Virginia.

### Subject Matter Jurisdiction

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

### Personal Jurisdiction

6. This Court has personal jurisdiction over the Firm because, among other reasons, it is a Virginia company that is transacting business in the Commonwealth of Virginia.

7. This Court has personal jurisdiction over Mr. Jernigan because, among other reasons, he is a resident of Virginia transacting business in Virginia.

### Venue

8. Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which the Defendant is subject to personal jurisdiction.

### Statement of Facts

9. In May of 2019, Mr. Martin went to the office of the Defendants to meet with Mr. Jernigan, a professional CPA, and to retain the Defendants on behalf of the Plaintiffs.

10. At that meeting, the parties strategized about what was needed to finish the business books for the Plaintiffs' limited liability companies and to file the Plaintiffs' personal tax returns and agreed to do a forensic accounting.

11. The Plaintiffs and the Firm entered into an oral contract for professional accountant services. The Plaintiffs were to be invoiced at the conclusion of the forensic accounting and filing of their tax returns.

12. For the scope of work, the Defendants would prepare and file tax returns for two limited liability companies that, at the time, were owned by Mr. Martin, Affinity Healthcare Group Newport News, LLC ("Newport News") and Affinity Healthcare Group Franklin, LLC ("Franklin"), as well as the Plaintiffs' personal tax returns for 2018-2020 (the "Tax Returns"). Because Newport News and Franklin were limited liability companies, for tax purposes, the entities were considered by the IRS as "disregarded entities," and, thus, any tax penalties and obligations were the personal responsibility of Mr. Martin.

13. At the time of the meeting, the Tax Returns were not delinquent, and Mr. Martin requested the Tax Returns be filed in a timely manner.

14. After retaining the Defendants, the Plaintiffs' case was assigned to Matthew Morse (Mr. Morse) and his team, who were employees of the Defendant. However, Mr. Jernigan at all relevant times was overseeing the management and/or work on the Plaintiffs' Tax Returns.

15. Mr. Morse and his team promptly requested QuickBooks usernames and passwords and began their work.

16. After some time passed, Mr. Martin sent several emails to Mr. Jernigan and Mr. Morse requesting an update. He received no responses.

17. Finally, Mr. Martin discovered through a paralegal of the Firm that Mr. Morse no longer worked in the office and had not been working there for months. In fact, Mr. Morse left shortly after Mr. Martin retained the Defendants.

18. Mr. Jernigan apologized for the issue and re-assigned the Plaintiffs' case to another CPA.

19. Mr. Martin was again asked for QuickBooks usernames and passwords so that the new CPA could begin work.

20. Shortly after this, Mr. Martin discovered that this new CPA was also no longer working for the Firm and that he would need to be re-assigned for the second time (his third CPA in total).

21. Because of the Defendants' failure to timely perform the work they were hired to perform, not only were the Plaintiffs unable to file the Tax Returns, but they also could not obtain traditional loans or financing for two related businesses, Affinity Healthcare Group-Vorhees, LLC and Affinity Healthcare Group Cherry Hill, LLC because these companies needed tax information from the Plaintiffs' Tax Returns to complete their own tax filings.

22. Around December of 2019, Mr. Martin sent an email to Mr. Jernigan and requested a phone conference to discuss the delays in the work on the Plaintiffs' Tax Returns as well as the serious financial injuries the Plaintiffs were going to face because of the delays.

23. On or around December 5, 2019, Mr. Martin was able to speak with Mr. Jernigan. On this conference call, Mr. Jernigan introduced Mr. Martin to another CPA (the fourth CPA assigned by the Defendants to his case), Mr. Matt Salisbury ("Mr. Salisbury").

24. During this call, Mr. Martin informed Mr. Jernigan and Mr. Salisbury that, if the Tax Returns were not filed right away, Mr. Martin would be forced to sell his 66% interest in both Affinity Healthcare Group-Vorhees, LLC and Affinity Healthcare Group Cherry Hill, LLC in order to sustain sufficient cash flow for the businesses. Mr. Martin expressed to both Mr. Jernigan and Mr. Salisbury how financially devasting losing these interests would be.

25. Mr. Martin also expressed to the Defendants his concerns about penalties/interest from the IRS and his concern about having the necessary funds to manage the Vorhees and Cherry Hill projects.

26. In addition, Martin notified the Defendants in December of 2019 that he was trying to obtain a home equity loan, but, because the Defendants had not filed the requested Tax Returns, the process could not move forward.

27. Upon beginning work, Mr. Salisbury complained that he did not know where to begin, and that he was just handed the file. He told Mr. Martin that he would need to start from the beginning.

28. Mr. Martin brought Mr. Salisbury up to speed but no notable movement on the case occurred.

29. Around February of 2020, Mr. Martin sent emails labeled "urgent" to Mr. Jernigan still asking for a status update on the Tax Returns. No response was received.

30. Mr. Martin was very concerned at this point, and around February 27, 2020, he hired a new CPA from a different firm to figure out what needed to be done.

31. Finally, the new CPA at the new firm took action to rectify the Defendants' delinquency and prepare/file the Tax Returns for the Plaintiffs.

32. However, to date, the Plaintiffs have had to pay substantial funds to the new CPA to resolve the problems created by the Defendants, including negotiating penalties and interest with the IRS.

33. Due to the Tax Returns being filed late, it is anticipated that the Plaintiffs have incurred and/or will incur significant interest/fees/penalties to the IRS.

34. The Defendants knew or should have known that failure to finalize the Tax Returns would result in severe penalties from the IRS.

35. Additionally, due to the Defendants' severely and prejudicially delinquent work on the Tax Returns, which prevented Affinity Healthcare Group-Vorhees, LLC and Affinity Healthcare Group Cherry Hill, LLC from completing their own tax filings and obtaining traditional

financing, Mr. Martin was forced to sell 66% of his shareholdings in both of these entities and bring on two new partners to fund the business and allow the businesses to function without any ability to obtain loans or financing.

36. This sale caused Mr. Martin to forfeit millions of dollars in equity to two new partners.

37. The Defendants were warned about this potential outcome by the Plaintiffs and were aware that their delinquency could lead to the forced sale of Mr. Martin's interest in the companies. Thus, the Defendants knew that their failure to timely prepare and file the Plaintiffs' Tax Returns and other bad acts were likely to cause the consequential damage sustained by the Plaintiffs.

38. The Firm is vicariously liable for the acts of its employees, including the CPAs who worked on the Plaintiffs' Tax Returns, and, thus, is liable for the damages sustained by the Plaintiffs.

## COUNT I
## BREACH OF CONTRACT
### (*against the Firm*)

39. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

40. The Plaintiffs and the Firm entered into an oral contract in May of 2019 for the provision of professional accounting services, including a forensic accounting, and the filing of the Tax Returns.

41. The contract required the Firm to perform these services in a timely and proper manner and without incurring penalties from the IRS.

42. In addition, the Firm had a duty to exercise a reasonable degree of care, skill and dispatch in carrying out the professional services for which it had been engaged.

43. The Firm breached the contract by failing to timely file the required Tax Returns, by failing to timely perform a forensic accounting, and by failing to update or inform the Plaintiffs regarding the delays.

44. The Firm is vicariously liable for the acts of its employees, including the CPAs who worked on the Plaintiffs' Tax Returns.

45. As a result of the Firm's breach, the Plaintiffs have suffered injuries of: 1.) the payment to a new CPA to resolve issues created by the Defendants in filing the Tax Returns (including negotiating fees and penalties with the IRS); 2.) the loss of Mr. Martin's equity due to the of the Defendants' delay in filing the Tax Returns; and 3.) IRS fees and penalties that will be incurred due to the eventual late filing of the Tax Returns.

46. The Firm also knew that its failure to timely prepare and file the Plaintiffs' tax returns and other bad acts were likely to cause the consequential damage sustained by the Plaintiffs.

WHEREFORE, the Plaintiffs hereby moves this Honorable Court for the following relief:

A. That the Court award to the Plaintiffs direct and consequential damages in the amount of $3,345,000 or such other amount as proven at trial; and

B. Such other and further relief as this Court determines is just and reasonable.

## COUNT II
## PROFESSIONAL MALPRACTICE
### (*against both Defendants*)

47. The Plaintiffs repeat and reallege each and every allegation above as if fully set forth herein.

48. The Firm is a certified public accountant firm, and Mr. Jernigan is a certified public accountant.

49. The contract between the Plaintiffs and the Firm was for professional accountant services and created an accountant-client relationship.

50. Mr. Jernigan is a professional CPA and was the accountant responsible for the management of the Plaintiffs' contract and all work related to the Tax Returns and created an accountant-client relationship with the Plaintiffs.

51. As a professional accountant/accountant firm, the Defendants had a duty to exercise a reasonable degree of care, skill and dispatch in carrying out the professional services for which it had been engaged, and the Defendants breached that duty by failing to timely file the required Tax Returns, by failing to timely perform a forensic accounting, and by failing to update or inform the Plaintiffs regarding the delays.

52. The Defendants' breach of their duties was a proximate cause of the damages claimed by the Plaintiffs.

53. The Defendants also knew that their failure to timely prepare and file the Plaintiffs' Tax Returns and other bad acts were likely to cause the consequential damage sustained by the Plaintiffs

WHEREFORE, the Plaintiffs hereby move this Honorable Court for the following relief:

A. That the Court award direct and consequential damages to the Plaintiffs in the amount of $3,345,000;

B. Such other and further relief as this Court determines is just and reasonable.

## JURY TRIAL DEMANDED

The Plaintiffs demands a trial by jury for all issues so triable.

Respectfully submitted,

**RONALD MARTIN AND BRITA MARTIN**

By:   /s/ Destinee Byers
      Of Counsel

Christopher D. Davis (VSB No. 74809)
Destinee Byers (VSB No. 94691)
DAVIS LAW, PLC
555 Belaire Ave., Ste. 340
Chesapeake, Virginia 23320
Tel: 757-410-2293
Fax: 757-257-8614
chris@davislawplc.com
destinee@davislawplc.com